1

2

3

4

5

6
IN THE UNITED STATES DISTRICT COURT

7
FOR THE EASTERN DISTRICT OF CALIFORNIA

8
ERIC CHARLES K'NAPP,

9
        Petitioner,           No. 2:08-cv-1040 JFM (HC)

10
    vs.

11

12
WARDEN OF SALINAS VALLEY
STATE PRISON,

13
        Respondent.      <u>ORDER</u>

14
_____/

15
       Petitioner is a state prison inmate proceeding pro se with a petition for a writ of

16
habeas corpus under 28 U.S.C. § 2254.[1]  In 1993, petitioner was sentenced to 98 years in state

17
prison following his conviction on multiple counts of rape, oral copulation, digital penetration,

18
and sexual battery, as well as one count each of burglary and assault with a deadly weapon, all in

19
violation of state law.  Petitioner's commitment offenses involved two victims, who will be

20
referred to in this order as C and S.[2]  Petitioner's claims also refer to a charge filed in connection

21
/////

22
/////

23

24
    [1]  This matter is proceeding before a United States Magistrate Judge with the consent of
the parties pursuant to 28 U.S.C. § 636(c).

25

26
    [2]  The references correspond to the first names of the individuals, which are set forth in
the pleadings filed in this action.

1   with a third alleged victim , who will be referred to as B in this order.[3]  That charge was severed

2   from the charges involving C and S prior to trial.

3                This action is proceeding on claims raised in petitioner's original petition, filed in

4   March 2008.  The petition contains six claims:  (1) newly discovered evidence of actual

5   innocence as to the convictions involving C; (2) ineffective assistance of counsel at trial,

6   sentencing and on appeal; (3) prosecutorial misconduct at trial; (4) jury prejudice; (5) cumulative

7   errors; and (6) arbitrary, capricious and vindictive sentencing.  Each of the claims has multiple

8   contentions.  See Petition at 53-68.  By order filed February 26, 2009, several of those

9   contentions were dismissed as time-barred.  The action is now proceeding on the following

10  claims:  Claim 1; Claim 2(c)(2),(4),(11),(13),(14); Claim 3(c)(1), (2), (3), (4), (7), and (10);

11  Claim 4(c)(3), (8); Claim 5(c)(1), (2), (7), (11), (13); and Claim 6(c)(7).  See Order filed

12  February 26, 2009 at 8.

13               In the answer, respondent contends that petitioner's claims are without merit.[4]

14                                      FACTS[5]

15        On August 4, 1992, [petitioner] saw C distributing flyers and
          saw her throw some away.  He pretended to be an employee of the
16        company which had hired her and claimed she was in trouble for
          discarding the flyers.  He talked her into getting a soda and, after
17        forcibly kissing her at one location, drove in front of a house and
          parked.  He attacked her, including digital penetration of her anus.
18        She escaped and promptly described [petitioner], his car and his
          key chain.  She identified him at trial.

19  /////

20

        [3]  See footnote 2, supra.
21

        [4]  Respondent also reasserts that all of petitioner's claims except claim 1 are time-barred.
22  On review of the record, for the reasons set forth in the order filed February 26, 2009 the court
    finds that claim 5(c)(11) is barred by the statute of limitations because it is based entirely on facts
23  known to petitioner at the time of trial.  In view of this court's findings that petitioner's
    remaining claims are without merit, the court will not revisit the question of the timeliness of
24  those claims.

25        [5]  The facts are taken from the opinion of the state court of appeal on petitioner's direct
    appeal, a copy of which was lodged by respondent in this action on August 6, 2008 as Lodged
26  Document 3, and this court's review of the record.

                                         2

On November 22,1992, [petitioner] followed S home from a bar in Citrus Heights and entered her house early in the morning: He raped her while in possession of a knife and wore a ski mask; she submitted out of fear. During one confused moment she thought he was a former boyfriend named "Jesse." As [petitioner] drove away from S's house an alert neighbor saw his license plate number. The police went to [petitioner]'s house and spoke with him: He denied knowing where Citrus Heights was, denied his car had left the apartment complex, denied owning a knit mask and was nervous. The police arrested him for rape. The police found the key chain and clothing described by C, as well as a knit mask.

[Petitioner] denied he attacked C. He thought he could prove an alibi, but learned just before trial that he could not.

The defense to the rape of S was consent. Apparently [petitioner] had seen S at a bar in Citrus Heights that night. He claimed she was attracted to him because of his work in drug enforcement: She made a suggestive remark about handcuffs. He followed her home, urinated by the side of her house, then stumbled through her front door, and passed out. He woke up inside the house, and, inexplicably, found himself lying on the balaclava he had stored in his car trunk. He apparently passed out again and again woke up.[6] He heard a noise so he armed himself with a kitchen knife. He finally went into S's room (after donning the balaclava) and they engaged in a variety of consensual sex acts. She turned on the light and said "You're not Jesse." After some discussion he told her he would not see her again. Then he left. He admitted not telling the entire truth to the arresting officers.

People v. Knapp, No. C017988 (Oct. 10, 1995), slip op. at 2-3.

Petitioner was initially charge with sixteen counts, including charges of rape, oral copulation, penetration with a foreign object, sexual battery, burglary, assault with a deadly weapon, and digital penetration. People v. Knapp, slip op. at 1-2 n.1, 4. As noted above, one of those counts involved a third individual, B; the count against B was severed prior to trial pursuant to the stipulation of the parties. See Lodged Document No. 1, Appellant's Opening Brief, at 2; People v. Knapp, slip op. at 1-2 n.1. Petitioner was convicted of eleven counts

/////

---

[6] The reason for the passing out was that [petitioner] was drunk: He explained that earlier in the evening he met with two Mormon elders regarding his upcoming baptism. He wanted to unwind after the meeting and so went to the bar and drank alcohol.

1    involving S, three counts involving C, and the other count was dismissed.  Id.  Petitioner was

2    sentenced to ninety-eight years in prison.  Id. at 1.

3                                              ANALYSIS

4    I.  Standards for a Writ of Habeas Corpus

5               Federal habeas corpus relief is not available for any claim decided on the merits in

6    state court proceedings unless the state court's adjudication of the claim:

7               (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
8               determined by the Supreme Court of the United States; or

9               (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
10              State court proceeding.

11   28 U.S.C. § 2254(d).

12              Under section 2254(d)(1),

13              "a state court decision is contrary to [the Supreme Court's] clearly
                established precedent if the state court applies a rule that
14              contradicts the governing law set forth in [Supreme Court] cases or
                if the state court confronts a set of facts that are materially
15              indistinguishable from a decision of th[e] Court and nevertheless
                arrives at a result different from [that] precedent." Lockyer v.
16              Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)
                (quoting Williams v. Taylor, 529 U.S. 362, 405–06, 120 S.Ct.
17              1495, 146 L.Ed.2d 389 (2000)). A state court decision makes an
                "unreasonable application" of Supreme Court precedent if it
18              "identifies the correct governing legal rule from [the Supreme]
                Court's cases but unreasonably applies it to the facts of the
19              particular [petitioner's] case." Williams, 529 U.S. at 407, 120 S.Ct.
                1495. The state's application of the Supreme Court precedent
20              "must be shown to be not only erroneous, but objectively
                unreasonable." Waddington v. Sarausad, 555 U.S. 179, 129 S.Ct.
21              823, 831, 172 L.Ed.2d 532 (2009) (emphasis added) (quoting
                Middleton v. McNeil, 541 U.S. 433, 436, 124 S.Ct. 1830, 158
22              L.Ed.2d 701 (2004) (per curiam)) (internal quotation marks
                omitted).

23

24   John-Charles v. California, 646 F.3d 1243, 1247 (9th Cir. 2011).

25              A federal habeas court "may not issue the writ simply because that court

26   concludes in its independent judgment that the relevant state-court decision applied clearly

                                                  4

1   established federal law erroneously or incorrectly.  Rather, that application must also be

2   unreasonable."  Williams at 412.  "A state court's determination that a claim lacks merit

3   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

4   that decision."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v.

5   Alvarado, 541 U.S. 652, 664 (2004)).

6           The court looks to the last reasoned state court decision as the basis for the state

7   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

8   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

9   federal habeas court independently reviews the record "to determine whether the state court

10  clearly erred in its application of Supreme Court law."  Pirtle v. Morgan, 313 F.3d 1160, 1167

11  (9th Cir.2002) (citing Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000)) ("Federal habeas

12  review is not de novo when the state court does not supply reasoning for its decision, but an

13  independent review of the record is required to determine whether the state court clearly erred in

14  its application of controlling federal law.").

15  II.  Petitioner's Claims

16      A.  Claim 1

17          Petitioner's first claim for relief is that newly discovered evidence demonstrates

18  that he is actually innocent of some of the charges arising from the incident involving C, in turn

19  casting doubt on the "accuracy and reliability of all the proceedings below."  Petition at 53.

20          This claim, which arises from C's recantation of certain aspects of her trial

21  testimony, was raised in habeas corpus proceedings in state court.  The state superior court

22  conducted an evidentiary hearing on this claim in 2006.  The court subsequently denied the claim

23  in a thirty page order.  See Ex. A to Answer, In re Eric Charles Rodney K'napp, No. 05F10781.

24  The court based its decision on its factual finding that "Charlene's recantations and her testimony

25  at the evidentiary hearing are not credible and that Charlene did not lie in any of her testimony at

26  trial."  Ex. A, slip op. at 18.  The court identified several "significant factors" which supported its

finding.  First, the court found that C "consistently related the details of the sexual assault from the day the crime occurred" on August 4, 1991 and through the time of her testimony at trial.  Id at 18-19.  Second, the court found that C's "actions and demeanor after the crime support the truth of her trial testimony."  Id. at 19.  Third, the court found that "the timing and circum stances of the recantation suggest that C[] has been influenced by her relationship with petitioner" following contacts that began with a 1999 letter from petitioner to C and continued and expanded to include petitioner's mother and his girlfriend.  Id. at 20.  Fourth, the court found implausible C's reasons for why she might have testified falsely at trial.  Id. at 24.  Instead, the court concluded that C's recantation "which comes over a decade after the offense and following approximately two years of correspondence between the petitioner and his family, is the result of a concerted campaign by petitioner and not an expression of the true facts."  Id. at 27.

Petitioner raises four subsidiary challenges to the state court's rejection of this claim.  First, he contends that the state court judge should have recused herself because two prior rulings that she made on petitioner's state habeas corpus petition had been overruled by the state court of appeal.  This contention is without merit.  Judicial rulings alone are insufficient to warrant recusal under California law, see Cal. Code Civ. P. § 170.1, and there is no evidence of cognizable bias in the record.

Second, petitioner contends the state court applied an improper standard of review to the claim, deciding whether or not C's recantation was true or false, rather than whether it could have been believed by a reasonable jury.  The state court applied the correct standard of review under California law, which requires a habeas corpus petitioner to "'" prove, by a preponderance of the evidence, facts that establish a basis for relief on habeas corpus. [Citation.]"'"  In re Cox, 30 Cal.4th 974, 998 (2003) (internal citations omitted).  Assuming

/////

/////

/////

1  arguendo that a federal claim based on actual innocence may be evaluated on the merits, such a

2  claim requires sufficient proof by petitioner

3        of his actual innocence to bring him "within the 'narrow class of
      cases ... implicating a fundamental miscarriage of justice.' "

4        [Shlup v. Delo,] 513 U.S. [298] at 314–15 [(1995)]) (quoting
      McCleskey [v. Zant], 499 U.S. [467] at 494 [(1991)]. The evidence

5        of innocence must be "so strong that a court cannot have
      confidence in the outcome of the trial unless the court is also

6        satisfied that the trial was free of nonharmless constitutional error."
      Id. at 316.  To pass through the Schlup gateway, a "petitioner must

7        show that it is more likely than not that no reasonable juror would
      have convicted him in the light of the new evidence." Id. at 327.

8

9  Lee v. Lampert, __ F.3d __, 2011 WL 3275947, slip op. at 6 (9th Cir. 2011).[7]  The standard of

10  review applied by the state court was certainly within the applicable federal standard of review

11  for petitioner's claim.

12        Finally, petitioner contends that the state court erroneously considered evidence of

13  statements he made to the Sacramento County District's Office under a promise of

14  confidentiality and immunity, as well as evidence beyond the scope of C's testimony at the

15  evidentiary hearing.  The former assertion is contravened by the finding of the state court judge

16  that the statements at issue were not made under a grant of immunity and followed contact

17  initiated by petitioner with the district attorney's office, see In re Eric Charles Rodney K'napp,

18  slip op. at 17, while the latter is unsupported by any fact or law which demonstrates that the

19  scope of the evidentiary hearing should have been so limited.

20        This court's review of the state court's factual finding

21        is controlled by 28 U.S.C. § 2254(d)(2).FN7  AEDPA § 2254(d)(2)
      authorizes federal habeas relief in those cases where the state-court

22        decision "was based on an unreasonable determination of the facts
      in light of the evidence presented in the State court proceeding."

23        See Miller–El v. Cockrell, 537 U.S. 322, 324, 123 S.Ct. 1029, 154
      L.Ed.2d 931 (2003).

24

25

26      [7]  These standards apply to a federal claim of actual innocence raised to proceed on a substantive claim that would otherwise be procedurally defaulted or time-barred.

1                  FN7. We apply § 2254(d)(2) to situations, such as
2  that here, where a "petitioner challenges the state
     court's findings based entirely on the state record."
3       Taylor v. Maddox, 366 F.3d 992, 999–1000 (9th
     Cir.2004). By contrast, we do not apply 28 U.S.C. §
4       2254(e)(1), which applies to challenges based on
     extrinsic evidence or "evidence presented for the
5       first time in federal court," and requires proof by
     clear and convincing evidence. Id. at 1000.

6  Maxwell v. Roe, 628 F.3d 486, 500 (9th Cir. 2010).

7          Petitioner is only entitled to relief if he can meet the standard required by §

8  2254(d)(2).  See Maxwell, id.  He has not done so.  He has not shown that the state court's

9  dispositive factual finding was based on an unreasonable determination of the facts presented at

10  the 2006 evidentiary hearing.  This claim will be denied.

11         B.  Petitioner's Remaining Claims

12          Petitioner's remaining claims arise from two contentions:  first, that there was a

13  failure to disclose exculpatory evidence regarding the third alleged victim, B; and second, that

14  there was a failure to investigate and discover impeachment evidence against a rebuttal witness

15  called by the prosecution, Lynne Rominger.  For each of these contentions, petitioner raises

16  claims of ineffective assistance of counsel, prosecutorial misconduct, denial of right to a fair trial

17  through jury prejudice, trial court error, and a claim that his sentence is cruel and unusual

18  punishment in violation of the Eighth Amendment.  There is no dispute that petitioner exhausted

19  all of these claims in the state courts.  After review of the record, for the reasons set forth below

20  this court finds that none of the evidence relied on by petitioner would or should have been

21  admitted at his trial or at sentencing.  For that reason, petitioner cannot show any constitutional

22  error from the absence of such evidence, or that he is entitled to federal habeas corpus relief on

23  any of the claims based on such evidence.

24          Petitioner's first contention is that the jury should have been made aware of a

25  police crime report that he contends contains "exculpatory evidence of his actual innocence in the

26  B rape case."  Petition at 55.  A copy of the report is attached as Exhibit B to Respondent's

1  Answer, filed April 9, 2009.  The short answer to all of the claims based on this report is that, as

2  noted above, the charge involving B case was severed from the charges tried in the underlying

3  case.[8]  For that reason, even assuming arguendo that the police report contained any exculpatory

4  evidence, a finding this court does not make, this report contained no evidence that would have

5  been admissible in petitioner's trial or that would have required mitigation of the sentence

6  imposed by the trial court.[9]

7          Petitioner's second contention is that evidence that a restraining order was sought

8  against rebuttal witness Lynne Rominger should have been introduced to impeach her rebuttal

9  testimony.  A copy of the application is attached as Exhibit D to Respondent's Answer.  The

10  short answer to this contention is that the application at issue did not exist until mid-October

11  1993, almost two months after petitioner's conviction.  Moreover, Lynne Rominger was called as

12  a witness solely to rebut petitioner's testimony that he had never been in the vicinity of Birdcage

13  Mall in Sacramento.  Neither the application nor the alleged events on which it is based would

14  have provided a basis for impeaching Ms. Rominger's testimony or for mitigating the sentence

15  imposed by the trial court.

16          For the foregoing reasons, petitioner cannot show that the state courts' rejection of

17  his remaining claims meet the applicable standards for habeas corpus relief set forth in 28 U.S.C.

18  § 2254(d).  Accordingly, claim 2(c)(2),(4),(11),(14); claim 3(c)(1), (2), (3), (4), (7), and (10);

19  claim 4(c)(3), (8); claim 5(c)(1), (2), (7), (13); and claim 6(c)(7) will be denied.

20  /////

21  _____

22          [8]  It appears that petitioner was never tried on the count involving B.  See Answer at 15.

23          [9]  Petitioner's theory of why this report is exculpatory illustrates why there was no error in
   failing to present the report to the jury.  Petitioner's contention that the report is exculpatory
   relies on additional evidence, all related to the B case.  See Petitioner's Reply to Respondent's
24  Answer, filed August 24, 2009, at 72-76.  None of that evidence would have been admissible at
   the underlying trial in this case because, as noted above, the count involving B was severed.
25  There were only two instances during the trial where any suggestion of a third victim was made
   in the record.  No timely constitutional challenge to those instances is before this court, and, in
26  any event, in neither instance would admission of the report been required as a result.

III.  <u>Certificate of Appealability</u>

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).

Where, as here, some of the claims are dismissed on procedural grounds, a certificate of appealability "should issue if the prisoner can show:  (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"  <u>Morris v. Woodford</u>, 229 F.3d 775, 780 (9th Cir. 2000) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

After review of the record herein, this court finds that petitioner has not satisfied the first requirement for issuance of a certificate of appealability in this case with respect to the claims dismissed as time-barred. Specifically, there is no showing that jurists of reason would find it debatable whether those claims are time-barred.  With respect to the claims denied on the merits in this order, for the reasons set forth herein petitioner has not made a substantial showing of the denial of a constitutional right.

For the foregoing reasons, the court will not issue a certificate of appealability.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's claim 5(c)(11) is dismissed as barred by the statute of limitations;

2. Petitioner's Claim 1, Claim 2(c)(2),(4),(11),(14); Claim 3(c)(1), (2), (3), (4), (7), and (10); Claim 4(c)(3), (8); Claim 5(c)(1), (2), (7), (13) and Claim 6(c)(7) are denied on the merits;

3.  The Clerk of the Court is directed to enter judgment in this action in accordance with this order and the order filed February 26, 2009; and

4.  This court declines to issue a certificate of appealability.

DATED: September 26, 2011.

UNITED STATES MAGISTRATE JUDGE

12
knap1040.hab